BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

MATTHEW J.  KLUGE (PABN 204285)
Trial Attorney, Tax Division
matthew.j.kluge@usdoj.gov
COLIN SAMPSON (CABN 249784)
Assistant United States Attorney, Tax Division
Colin.Sampson@usdoj.gov
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
Telephone:     (415) 436-7020
Facsimile:      (415) 436-7009

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:14-cr-00590-PJH |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| RICHARD THOMAS GRANT, | Date:     November 9, 2016<br>Time:     2:30 p.m.<br>Place:    Courtroom #3, Oakland |
| Defendant. | |

The United States of America, by and through Brian J. Stretch, United States Attorney, Northern District of California, Colin Sampson, Assistant United States Attorney, and Matthew J. Kluge, Trial Attorney, Tax Division, pursuant to Local Criminal Rule 32-5(b), hereby respectfully submit this Sentencing Memorandum. For the reasons set forth below, the United States requests that the Court sentence the Defendant, Richard T. Grant, Jr., (hereinafter "Defendant") to a term of 57 months' imprisonment (which equates to the middle of the United States Sentencing Guidelines range given a total offense level of 24 and criminal history category of I), a three -year term of supervised release,

restitution as a condition of supervised release in the amount of $402,457.39, a $300 special assessment, and impose a fine of $100,000.  A fifty-seven (57) month sentence is sufficient, but not greater than necessary, to achieve both Guidelines and statutory sentencing goals.  Such a sentence is just punishment for Defendant's conviction on multiple counts of tax evasion, and gives appropriate consideration to Defendant's more than decade-long criminal conduct with regards to both federal and state taxes, as well as the amount of the loss, the defendant's education level, age, and other characteristics.

## I.    Charges and Conviction

On November 20, 2014, a grand jury sitting in the Northern District of California returned a three-count indictment against Defendant, charging him with three counts of tax evasion, in violation of 26 U.S.C. § 7201.  On December 4, 2014, the grand jury returned a superseding indictment, charging Defendant with the same conduct and correcting a scrivener's error with respect to the years at issue. Defendant, who did not file federal tax returns since 2000, was charged with evading payment of his 2005 through 2007 federal income tax liabilities (Count One) by concealing his assets through the use of a warehouse bank and through the use of postal money orders, cashier's checks, and prepaid debit cards. Defendant was also charged with evading the assessment of his 2008 and 2009 federal income taxes (Counts Two and Three) through his failure to file tax returns for those years and by attempting to conceal the revenue from his half of his company, Grant Engineering, by causing the company's tax returns and partnership schedules to not be filed, and by using cashier's checks and postal money orders to conceal his assets and income.

Trial commenced on June 7, 2016.  On June 20, 2016, the jury reached a verdict of guilty on all counts.

At trial, the government showed that Defendant's 1999 income nearly doubled from 1998, resulting his tax bill doubling, to $71,561.  Defendant never filed a tax return again, and never made any payment of federal tax again.  In early 2001, Defendant paid for two "reliance" letters, one from an attorney in Louisiana and another from an individual in Florida, neither of whom he had ever met or spoken to, relating to the constitutionality of federal income tax.  The letters urged Defendant to do his own legal research, which he did not do.  Defendant himself acknowledged that the letters would be

2

considered by many to be "quackery."  Around the time IRS began sending Defendant letters about his unfiled tax returns in late 2004, Defendant began paying thousands of dollars per year to "Freedom Law School" and its Dean, Peymon Mottahedeh, for assistance in defeating the IRS.  Despite IRS' attempts to get Defendant into compliance, he persisted in appealing IRS' assessment of tax against him based on the Schedules K-1 that he briefly continued to file for Grant Engineering.  Defendant filed a lawsuit in the United States Tax Court challenging IRS' procedures in filing a tax lien against his house. Defendant failed to show up for trial, and the case was dismissed.  When the Court dismissed his petition, he appealed to the Ninth Circuit, and lost.

Defendant was in charge of the tax returns for the partnership, Grant Engineering, which he ran with his brother, Randall.  Although Defendant stopped filing Grant Engineering's partnership tax returns in the early 2000s, he continued to pay Morre & Company, CPA to prepare the returns, and provided his brother with a Schedule K-1 for him to prepare his own tax returns.  Defendant deliberately concealed from his brother the fact that he was not filing the partnership returns.  Moreover, Defendant continued to collect new and updated tax forms from his employees, and withhold the employment and income taxes from their wages, paying them over to the IRS biweekly.

In a letter dated September 21, 2009, IRS provided Defendant with a pamphlet about why citizens must pay taxes, and warning him of the fallacies of protester arguments and criminal penalties for tax evasion.

When IRS issued a summons to a supplier of Defendant's business, he filed a petition to quash the summons in the Central District of California.  Later, when IRS-CI began investigating Defendant for tax evasion, Defendant filed multiple actions seeking to quash IRS summonses, in the Central District of California, Northern District of California, and Southern District of Ohio.  In all instances, Defendant failed to do anything beyond filling the petitions, and the Courts in all instances rejected the petitions.  Although Defendant disputes mailing the letter, he prepared a letter under his brother's signature responding to an IRS summons, misleadingly stating that Randall Grant did not have access to financial records relating to Grant Engineering.

Although no materials produced to the Government by Defendant contained any assertion that California's income tax was somehow unconstitutional, Defendant stopped paying his state income tax

and stopped filing his state income tax returns after 1999.  However, to prevent a deed sale of his home by Contra Costa County, Defendant made sure to fully pay his property taxes.

During the time that Defendant was not filing his income tax returns or the tax returns for the partnership, and after the IRS took steps to attempt to collect past due taxes owed by Defendant for the years 2001 and 2002, Defendant sought to keep IRS from discovering his income or seizing his assets. Defendant effectively ceased using his personal bank accounts that were tied to his Social Security Number.  Instead, Defendant began using "MyICIS," a warehouse bank in Arkansas where he sent his distribution checks, in amounts as high as $21,000.  Warehouse banks are specifically designed to conceal ownership of funds deposited with the bank, and MyICIS was marketed to individuals as a way to help participants evade taxes.  Defendant would then fund prepaid debit cards that were not associated with his identity, and print "digital money orders" to pay regular bills and personal expenses.  After IRS shut down the warehouse bank in 2006, Defendant then devised a scheme to take his partnership distribution checks to Mechanics Bank, where he would convert them to cashier's checks and to cash without the deposit appearing on his joint or individual checking accounts.  For most bills under $1,000, Defendant went to the Post Office to obtain postal money orders in the amount of his bills.  Using this method, Defendant made his bank statements appear as if he had no income and little expenses, and prevented IRS from levying most of his income or assets, which he held outside of traditional bank accounts.

During the time that Defendant was evading his taxes, he maintained an expensive restored seaplane, called a Grumman HU-16 "Albatross" and hired pilots to fly it to Lake Tahoe, Lake Mead, and Canada with his family and friends.  *See* Exhibit 4.  He even rented it to the military for training flights. Moreover, Defendant collected spare parts for his plane, including an engine and wings that he stored at Grant Engineering.  Defendant put his two daughters through out-of-state college, frequently using Digital Money Orders, cashier's checks, and postal money orders to pay for tuition and housing. Defendant and his wife owned timeshares at summer and winter destinations- Incline Village, Nevada, and Sedona, Arizona.  No later than 2013, Defendant acquired a 52 foot, 2-bedroom DeFever yacht in Jupiter, Florida called the "Last Laugh," which he appears to own with his wife in the name of a Montana LLC.  *See* Exhibit 3. According to Randall Grant's trial testimony, Defendant further acquired

1   approximately $300,000 in gold coins, during the period of time that he was not paying income taxes.

2   Defendant further made regular $3,042 mortgage payments on his waterfront home with a boat dock on

3   Brickyard Cove in Point Richmond, California.

4         In all aspects of Defendant's life outside of his tax evasion, Defendant functioned as a regular

5   member of society.  Defendant ran a successful business, lived in a waterfront development, raised two

6   children, visited his family, and indulged in his hobbies, heavily skewed toward aviation and boating.

7   Defendant testified that he hid from his wife that he was not paying any taxes or filing tax returns.

8         Even after Defendant was indicted, Defendant has not filed any income tax returns, nor made

9   any payment of taxes.  Defendant has further made no restitution payments since his conviction on June

10   20, 2016.

11   **II.   United States Sentencing Guidelines**

12         Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take

13   them into account when sentencing."  *United States v Booker*, 543 U.S. 220, 267 (2005); *see also Gall v.*

14   *United State*s, 552 U.S. 38, 51 (2007) (stating that the failure to calculate, or improperly calculating, the

15   Guidelines range constitutes a procedural error at sentencing).  In the instant case, it is both the

16   Probation Office's and the United States' position that Grant's total offense level is 24.  The Presentence

17   Report ("PSR") reports that Grant's Criminal History Category is I.  A total offense level of 24 and a

18   Criminal History Category of I corresponds to an advisory Guidelines sentencing range of 51 to 63[1]

19   months' incarceration.

20         A.   Tax Loss Calculation

21         Under the Guidelines, the primary factor in determining the offense level for a tax crime is the

22   tax loss.  The tax loss for a case involving tax evasion is the total amount of loss that was the object of

23   the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed).

24   U.S.S.G. §2T1.1(c)(1).  To determine the tax loss, the Court must engage in a two-step process.  First,

25   the Court must determine which tax deficiencies to aggregate together, and second, it must determine

26

27   _____

28   [1] The statutory maximum for each of Defendant's three counts of conviction is 60 months, or
    five years.  *See* 26 U.S.C. § 7201.  Any sentence above 60 months would require that some counts are
    served consecutively, and not concurrently.

1    how to calculate the amount of the aggregated deficiencies.  *See United States v. Meek*, 998 F.2d 776,

2    781 (10th Cir. 1993).

3            U.S.S.G. §3D1.2 requires aggregation of all counts of conviction "involving substantially the

4    same harm," and §1B1.3 requires aggregation of all "relevant conduct" when determining a defendant's

5    base offense level.  Thus, the tax loss for sentencing should not only include the tax loss from the counts

6    of conviction, but also the tax loss from any relevant conduct.  The Guidelines state, "all conduct

7    violating the tax laws should be considered as part of the same course of conduct or common scheme or

8    plan unless the evidence demonstrates that the conduct is clearly unrelated."  *See United States v.*

9    *Whistler*, 139 Fed. Appx. 1, 4 (9th Cir. 2005) (*quoting* U.S.S.G. §2T1.1, cmt. n.2).  Even uncharged tax

10   losses constitute relevant conduct that a sentencing court may consider in determining the base offense

11   level.  *See United States v. Rose*, 20 F. 3d 367, 372-73 (9th Cir. 1994) (uncharged money laundering

12   counts); *Higgins*, 2 F.3d 1094, 1097-98 (10th Cir. 1993) (uncharged tax losses). Finally, state taxes may

13   be included when they result "from a defendant's failure to report the same income to both federal and

14   state tax authorities."  *United States v. Yip*, 592 F.3d 1035, 1038-39 (9th Cir. 2010).

15           In this case, the Court should determine the total tax loss resulting from the counts of conviction

16   (2005 through 2009), and from several categories of relevant conduct, including: tax loss from

17   Defendant causing his wife to fail to file and pay federal income taxes for the years 2005 through 2009;

18   tax loss from Defendant's failure to file and pay federal income tax due from himself and his wife for

19   the years 2000 through 2004 and 2010 through 2015; and tax loss resulting from Defendant's failure file

20   and pay California state income tax due from himself and his wife for the years 2000 through 2015.

21                           *1.  Counts of Conviction*

22           Defendant was found guilty of tax evasion for the years 2005 through 2009.  At trial Revenue

23   Agent Edward Barfels provided summary witness testimony of the tax consequences of various income

24   and expense items presented through numerous fact witnesses.  Revenue Agent Barfels prepared a

25   revenue agent report (RAR), which was admitted into evidence at trial as Exhibit 361.  This RAR

26   reflected a conservative calculation of the additional tax due and owing from Defendant.  This

27   calculation was highly conservative as the Government was obligated to prove a tax loss, an essential

28   element of tax evasion, beyond a reasonable doubt.

For sentencing, Revenue Agent Barfels prepared an amended RAR to determine the tax loss to the Government as a result of Defendant's criminal conduct. *See Exhibit* 1. The tax loss calculations reflected in this amended RAR are based on U.S. Partnership Returns (Forms 1065) and Schedules K-1 that listed ordinary income and guaranteed payments to Defendant from Grant Engineering and Manufacturing. Defendant's tax due and owing on the amended RAR were computed using the filing status of Married Filing Jointly with his wife. The tax loss calculation allowed Defendant exemptions for himself, his wife, and his two daughters when appropriate. The calculation allowed Defendant itemized deductions for home mortgage interest and property taxes he paid.[2] The calculation also allowed for deductions for Defendant's health insurance for the years that this was permitted by statute. And the tax loss calculations take into account two estimated tax payments Defendant made toward his tax liability for the year 2000.

The tax loss calculations for the years included in Count One, 2005 through 2007, include interest and penalties. Including interest and penalties in the calculation of tax loss for these years is appropriate pursuant to U.S.S.G. §2T1.1, Application Note 1, which states, "The tax loss does not include interest and penalties, except in willful evasion of payment cases under 26 U.S.C. § 7201 . . ." Defendant was convicted in Count One of evasion of payment for the years 2005, 2006, and 2007, and evasion of assessment for the years 2008 and 2009. Based on this amended RAR, the additional tax due and owing from Defendant for the years of conviction totals $582,836. The Government intends to call Revenue Agent Barfels as a witness at sentencing to introduce into evidence and explain his amended RAR, if necessary.

> 2. *Relevant Conduct: Tax Loss from 2000 through 2004 and 2010 through 2015*

Even though Defendant was not criminally charged with tax evasion for tax years 2000 through 2004 and 2010 through 2015, the Court should include this tax loss as relevant conduct. *See Rose*, 20 F.3d at 372-73; *Higgins*, 2 F.3d at 1097-98 ("[E]ven uncharged tax losses constitute relevant conduct which a sentencing court may consider in determining the basic offense level.") (citation omitted). The

---

[2] Government does not have information regarding the home mortgage interest Defendant paid during the years 2000 through 2004. The calculations for each of these years give Defendant a mortgage interest deduction equal to the mortgage interest he paid in 2005.

Guidelines state that factors such as common victims, common purpose, and common *modus operandi* should be considered when determining if two or more offenses constitute part of a common scheme or plan.

Defendant's conduct with respect to both the evasion of payment for 2000 through 2007, and evasion of assessment for 2008 through 2015 had a common victim, the IRS; a common purpose, to evade taxes; and a similar *modus operandi*, concealment of income and assets through the use of a warehouse bank, cashier's checks, and Postal Money Orders, and the failure to file individual and partnership tax returns.  Therefore, Defendant's conduct in evading taxes due for tax years 2000 through 2004 and 2010 through 2015 was part of the same common scheme or plan, and part of the same course of conduct for which he was charged and convicted. Accordingly, the tax loss from these years should be included in the tax loss calculations.

The Court should include in the tax loss calculation the tax loss from Defendant that relates to tax years 2000 through 2004, even though he was not charged with tax evasion for these years because the statute of limitations had expired.  A sentencing court may rely on conduct that occurred outside the statute of limitations.  *See United States v. Williams*, 217 F.3d 751, 753-54 (9th Cir. 2000) ("Consideration of time-barred conduct for purposes of enhancing a defendant's sentence is consistent with this circuit's prior cases interpreting broadly the relevant conduct provision" of the United States Sentencing Guidelines). Just as Defendant did for the years charged in Count One, from 2000 through 2004, Defendant had significant income from partnership distributions from Grant Engineering and Manufacturing. However, Defendant did not file federal income tax returns or pay federal income tax (with the exception of two estimated payments during 2000). Defendant did file partnership returns for Grant Engineering for 2001 and 2002, and from these filings the IRS was able to calculate a tax due and owing from the Defendant, and the IRS attempted to collect the back-taxes owed by Defendant for these years.  Just as Defendant evaded the payments of the tax he owed for the years charged in Count One, Defendant also evaded the payment of the taxes he owed for the years 2000 through 2004 by failing to file his individual returns, and concealing his income and assets through the use of a warehouse bank. Because Defendant's conduct during 2000 through 2004 was part of the same common scheme or plan as his conduct during 2005 through 2007, and constituted evasion of payment, the tax loss from the

8

1    years 2000 through 2004 should be included as relevant conduct (totaling $868,140), and should include

2    interest and penalties for the reasons argued above.

3            *3.   Relevant Conduct: Tax Loss from Evasion of Payment*

4          As argued above, the tax loss calculation should include the intended loss that resulted from

5    Defendant's evasion of payment of taxes, interest, and penalties due to the IRS for tax years 2000

6    through 2007.

7          In calculating tax loss, the Guidelines generally do not permit the inclusion of interest and

8    penalties.  However, the Guidelines specifically provide that in evasion of payment cases tax loss does

9    include interest and penalties.  U.S.S.G. §2T1.1 cmt. n.1.  Accordingly, the tax loss as a result of

10   Defendant's evasion of payment for tax years 2000 through 2007 should include not only the tax due

11   from Defendant, but also interest and penalties.

12         The Court of Appeals for the First Circuit in *United States v. Thomas*, 635 F.3d 13 (1st Cir.

13   2011), was presented with facts similar to those in the instant case.  In *Thomas*, the defendant was

14   convicted of one count of tax evasion of assessment for 2001.  *Id.* at 17.  The district court at sentencing

15   included as relevant conduct the taxes, interest, and penalties from the defendant's tax evasion of

16   payment for the years 1995 and 1996.  *Id.* at 17-18.  The Court of Appeals for the First Circuit affirmed

17   stating:

18         [b]ecause [the defendant's] evasion of payment of taxes for 1995 and 1996 marked the
19         beginning of his twelve years' odyssey of tax evasion, it is part of a common scheme and
           course of conduct with the offense of which he was convicted.  Thus, the evasion of
20         payment for 1995 and 1996 was relevant conduct in furtherance of the evasion of
           assessment for 2001 [the count of conviction], and the district court properly included the
21         tax losses from those evasion-of-payment offenses in calculating [the defendant's]
           sentence.  Moreover, as those offenses are payment offenses, the district court correctly
22         included penalties and interest in calculating the tax loss resulting from them.

23   *Id.* at 18.

24         In the instant case, Defendant's tax evasion included not only the evasion of assessment for taxes

25   due for 2008 and 2009, but it also involved the evasion of payment of the taxes due from Defendant for

26   tax years 2000 through 2007. This amount totals $1,311,619.  *See* Exhibit 1, p. 5.  Revenue Agent

27   Barfels calculated this amount based on IRS records, and the Government intends to call him as a

28   witness to introduce his calculations at sentencing, if necessary.

Tax loss is calculated by the loss amount that was the object of the offense. *See* U.S.S.G. §2T1.1(c)(1).  Here, Defendant intended to prevent the IRS from collecting his outstanding taxes, interest, and penalties by concealing his income through the use of a warehouse bank and by failing to file Grant Engineering's partnership tax returns.

### 4.   Relevant Conduct: Tax Loss from State Taxes for 2000 through 2015

The Court should include state tax loss from Defendant's misconduct in calculating the tax loss. Courts routinely include state tax loss in calculating the total tax harm caused by a defendant's misconduct.  *See United States v. Yip*, 592 F.3d 1035, 1038 (10th Cir. 2010); *United States v. Powell*, 124 F.3d 655, 664 (5th Cir. 1997); *and United States v. Maken*, 510 F.3d 654, 659 (6th Cir. 2007). Here, just as Defendant failed to file federal income tax returns, Defendant failed to file California state tax returns from 2000 onward.  Defendant evaded his state taxes for the years 2000 through 2015 in the same manner in which he evaded his federal taxes.

Revenue Agent Barfels calculated the California state tax losses for the years 2000 through 2015 to be $204,603.  *See* Exhibit 1, p. 5. The Government intends to introduce evidence in support of this calculation at sentencing, if necessary.

### 5.   Total Tax Loss

The total tax loss, including relevant conduct, amounts to $2,118,394.  This total tax loss equates to a base offense level of 22 pursuant to U.S.S.G. §2T4.1(i).

### B.   Obstruction of Justice

The United States agrees that an enhancement for obstruction of justice is appropriate. Pursuant to U.S.S.G. § 3C1.1, a 2-level enhancement is appropriate where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct."  Defendant submitted a June 23, 2011 letter (attached) to IRS Criminal Investigation Special Agent Alex Moran under his business partner's name, falsely stating that Randall Grant did not have any summonsed documents in his custody or control.

Demonstrated by Trial Exhibits 136 through 141, during 2011 and 2012, while the criminal

1   investigation was pending, defendant instituted at least three actions in three separate judicial districts

2   seeking to quash IRS summonses issued by case agent Alex Moran.  The petitions sought to prevent

3   Special Agent Moran and the IRS from obtaining evidence about defendant's income and expenses from

4   Carole Zinck and Associates (Grant Engineering's bookkeeper), Bio-Rad Laboratories (a major

5   customer of Grant Engineering), and Macy's, Inc.  In the case of the petition related to Carole Zinck and

6   Associates, Defendant represented Grant Engineering and Manufacturing, without his partner's

7   knowledge.  All of Defendant's suits were rejected by the courts, as Defendant failed to prosecute these

8   cases after filing the petitions. These facts demonstrate that Defendant was seeking to delay IRS through

9   frivolous suits, which he succeeded in doing for 28 months from July 2010 through November 2012,

10  rather than protect or vindicate his rights. *See United States v. Draper*, 996 F.2d 982, 986 (9th Cir. 1993)

11  (defendant need not be successful in his attempt to obstruct the administration of justice). Moreover, the

12  June 2011 letter to IRS Special Agent Alex Moran, prepared by Richard Grant but sent under Randall

13  Grant's name and signature, misleadingly told the investigator that Randall Grant had no access to the

14  financial documents summonsed by IRS for the criminal investigation.[3]

15      To qualify for the enhancement, a defendant's obstructive conduct must go beyond "refusal to

16  admit guilt" or "the exercise of a constitutional right.".  However, Defendant's conduct in the face of the

17  criminal investigation, from 2011 through 2012, was squarely aimed at frustrating the collection of

18  evidence against defendant for use in criminal proceedings. The examples of obstructive conduct in the

19  Commentary to the relevant Guideline are instructive:  Section 4(D) includes concealing or directing or

20  procuring another person to destroy evidence that is material to an official investigation. . . or attempting

21  to do so."  Moreover, Note 9 holds defendants "accountable for defendant's own conduct and for

22  conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully

23  caused."

24      Defendant's actions, through filing successive frivolous petitions to quash criminal investigatory

25  summonses, and writing a letter to the IRS Special Agent posing as his partner and declining to provide

26  summonsed documents, constitutes obstruction of justice and qualifies Defendant for a 2-level

27

28      [3] Defendant has previously sent a letter to IRS Revenue Agent Patricia Young-Lau dated July 10,
        2010, purporting to be from Randall and refusing to meet with IRS pursuant to a summons.

1  enhancement pursuant to U.S.S.G. § 3C1.1.  As a result, the Court should calculate Defendant's total

2  offense level to be 24.

3  **III.    18 U.S.C. § 3553(a) Factors**

4  Even as modified by *Booker*, 543 U.S. 220 (2005), the Sentencing Reform Act continues to

5  direct that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with

6  the purposes set forth" in the Sentencing Reform Act.  18 U.S.C. § 3553(a), and, in so doing, the Court

7  "shall consider," among other things: (1) the nature and circumstances of the offense and the history and

8  characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of

9  the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford

10 adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

11 and (D) to provide the defendant with needed educational or vocational training, medical care, or other

12 correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of

13 sentence and the sentencing range established by the Guidelines; (5) any pertinent policy statement; and

14 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have

15 been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a).  In this case, these factors support a

16 Guideline sentence.

17 In light of the congressional command that the court "shall impose a sentence sufficient . . . to

18 comply with the purposes . . .  promote respect for the law . . .achieve just punishment," and "afford

19 adequate deterrence to criminal conduct," there is a compelling need for a sentence that includes a term

20 of incarceration at the Bureau of Prisons for 57 months, followed by a three-year period of supervised

21 release.

22 A sentence of 57 months is sufficient, but not greater than necessary, and accounts for (1) the

23 seriousness of the offenses, (2) provides adequate deterrence, (3) avoids sentencing disparities, and (4) is

24 consistent with the Guidelines.  A sentence of probation, or any deviation from the Guidelines, is not

25 warranted, as Defendant's circumstances do not take him outside of the heartland of cases that the

26 Guidelines are meant to address.  The most critical factors here are specific and general deterrence.

27 Defendant, and any would-be defendant should be forced to decide whether they would forfeit freedom

28 for greed in carrying out any similar scheme to attempt to evade taxes on over a million dollars in

12

income through the use of tax-defier groups, lawsuits, and a warehouse bank.

A.      Seriousness of the Offense

The conduct is this case is serious for several reasons. First, Defendant exhibited a complete and total disrespect for the laws requiring him to file tax returns and pay taxes, which he understood, from 2000 until his trial.  During this time, Defendant carried on as a regular and affluent member of his community, even appearing to be generous to his employees, all while he kept from others that he paid no income tax, even as he withheld taxes from his employees.  Second, defendant fought the IRS at every turn, paying thousands of dollars to the anti-tax movement to help shield his income, which exceeded $300,000 per year at times, from any income tax, and kept his money outside of the formal banking system to prevent its seizure.  Third, Defendant carried on his actions, which avoided hundreds of thousands of dollars in taxes per year, for one and a half decades, from 2000 until he was convicted in 2016. Defendant evaded nearly a million dollars in federal taxes, as well as interest, penalties, and California income tax, which combined total over $2 Million.  Finally, Defendant abused his position as the partner in charge of filing the company's taxes to conceal his own income from the IRS.

B.      General and Specific Deterrence - Respect for the law

The United States respectfully disagrees with the PSR recommendation of 43 months, eight months below the low-end of the Guidelines, as an appropriate sentence in this case. The need for deterrence in tax cases is of great significance to the Internal Revenue Service.  A below-guidelines sentence for tax evasion would send the wrong public message and certainly would not fulfill the need for deterrence in tax cases.  General deterrence is one of the prescribed goals of every sentencing, *United States v. Pugh*, 515 F.3d 1179,1194 (11th Cir. 2008), but it occupies an especially important role in sentencing for criminal tax offenses, because criminal tax prosecutions are relatively rare in each District.  News of a lengthy sentence given to a member of a community, whether Point Richmond, the small business community of Richmond, or the Bay Area in general, carries a strong message of deterrence to others interested in going down the same path.  Conversely, a short sentence or a sentence of probation may only embolden others to evade their taxes, believing that they may not be caught or may not serve time in prison if they are caught.

The criminal tax laws are designed to protect the public interest in preserving the integrity of the

13

1  nation's tax system.  Criminal tax prosecutions serve to punish the violator and promote respect for the

2  tax laws.  Because of the limited number of criminal tax prosecutions relative to the estimated incidence

3  of such violations, deterring others from violating the tax laws is a primary consideration underlying

4  these guidelines.  Recognition that the sentence for a criminal tax case will be commensurate with the

5  gravity of the offense should act as a deterrent to would-be violators. U.S.S.G. Ch 2, pt. T, introductory

6  cmt. (emphasis added).  See also *United States v. Burgos*, 276 F.3d 1284, 1290 (11th Cir. 2001)

7  (observing "[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be

8  general deterrence.").

9          In that regard, a significant term of imprisonment should be imposed against the Defendant to

10  deter others and to promote respect for the law.  In tax evasion cases, as here, it is not atypical for

11  numerous IRS Revenue Officers, Revenue Agents, and Criminal Agents to spend hundreds or thousands

12  of hours attempting to get a taxpayer such as the Defendant to comply with his tax obligations, or to

13  develop the case for prosecution if he does not.  A term that is completely or partially non-custodial

14  would fail to promote respect for the law.  A purely probationary term would send a message that the

15  punishment for criminal tax evasion and a civil tax case are no different.

16          A sentence of no imprisonment, or just a fine, does not promote deterrence.  Instead it fosters a

17  belief that tax crimes are not serious, that they are inconsequential.  Such a sentence cries out that this

18  Court tolerates lies to government agencies, and frivolous lawsuits against agencies and their employees.

19  It also promotes the cynical belief that justice system punishes only the poor, but gives a pass to others,

20  including those as fortunate as Richard Grant, who owns a waterfront home on the San Francisco Bay,

21  has restored a seaplane and a flying boat, and owns a 52' yacht called the "Last Laugh." *See* Exhibits 3-

22  4. Finally, a light sentence promotes gambling with tax returns, either by nonfiling or by filing false

23  returns, a game of chance with potentially high rewards and little risk, in which the only consequence to

24  losers is to pay the civil tax debt.

25          The importance of imprisonment in tax cases was highlighted in *United States v. Ture*, where the

26  Eighth Circuit vacated a non-prison sentence in a $250,000 tax evasion case because the district court

27  "failed to consider the importance of a term of imprisonment to deter others from stealing from the

28  national purse." 450 F.3d 352, 358 (8th Cir. 2006).  The admonition of the Court of Appeals in *Ture*

applies: "the goal of deterrence rings hollow if a prison sentence is not imposed in this case." *Id*. Along those lines, there is a public perception in cases like this of wealthy, white collar defendants finally being charged, and getting away with probation or a sentence significantly below the guidelines, while other defendants are not so fortunate. A sentence of imprisonment is proper, and should be imposed to end that belief. This case is not unusual in any way that warrants a downward departure from the Guidelines.

### C.   Avoidance of Sentencing Disparities

The Guidelines range suggests a sentence of between 51 and 63 months' incarceration. The best way to ensure that Defendant's sentence is not disparate from those convicted of similar crimes is to sentence him to within the Guidelines range.

### D.   Defendant's History and Characteristics

The United States respectfully disagrees with the PSR to the extent that it recommends a below-guidelines sentence based on Defendant's otherwise "law abiding life." The relevant departure Guideline, for "aberrant behavior," U.S.S.G. § 5K2.20, is inapplicable here. Such a departure is appropriate where "the defendant committed a single criminal occurrence or single criminal transaction." Here, Defendant was convicted of three, representing his tax liabilities for the years 2005 through 2009. The "aberrant behavior" departure is further only applicable where the offense was committed "without significant planning." However, as proven at trial and admitted by the Defendant himself, he sought reliance letters regarding the income tax from two attorneys as early as 2001, paid Freedom Law School for courses and assistance for approximately a decade, filed multiple lawsuits against the United States to slow or stop its investigation of his tax liabilities, and printed hundreds of "digital money orders" using a warehouse bank in Arkansas to deposit his income and pay his personal expenses. Finally, the departure is only appropriate where the crime "was of limited duration." Here, Defendant stopped paying taxes and filing tax returns in 2000, and continued through trial in 2016. Defendant's tax crimes, spanning one-third of his adult life, do not represent a crime of a limited duration.

///

///

15

1     **IV.**    **Restitution**

2         C.    <u>Restitution</u>

3       The Court should order Defendant to pay restitution to the IRS in the amount of $402,457.39 as a

4 condition of supervised release.

5       Defendant has been convicted of three counts of tax evasion, in violation of 26 U.S.C. § 7201. A

6 Section 7201 violation is not an enumerated offense for which restitution is authorized by the Victim

7 and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663; or the Mandatory Victim Restitution

8 Act of 1996, 18 U.S.C. § 3663A. However, the Court may order restitution as a condition of supervised

9 release under 18 U.S.C. §§ 3583(d) and 3563(b). *See United States v. Batson*, 608 F.3d 630, 633-37 (9th

10 Cir. 2010) (holding that district courts are authorized to order restitution for a violation of Title 26

11 offenses as a condition of supervised release). Such restitution is limited to the loss "caused by the

12 specific conduct that is the basis of conviction." *Id.* In order to make the victim whole, the amount of

13 restitution may include interest, but not penalties. *See United States v. Patty*, 992 F.2d 1045, 1049 (10th

14 Cir. 1993) (holding that prejudgment interest reflects the victim's loss due to his inability to use the

15 money for a productive purpose and is necessary to make the victim whole).

16       An order of restitution by the Court as a condition of supervised release will permit the IRS to

17 use this order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). Defendant does not have

18 the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C).

19 Neither the existence of a restitution payment schedule nor the Defendant's timely payment of

20 restitution according to that schedule will preclude the IRS from immediately collecting the full amount

21 of the restitution-based assessment, including by levy and distraint under 26 U.S.C. § 6331. Interest on

22 the restitution-based assessment will accrue under 26 U.S.C. §§ 6601 and 6621 from the last date

23 prescribed for payment of the liability that is the subject of the restitution order to the date that the IRS

24 receives payment.

25       The Revenue Agent Report, Form 4549-A, prepared by Revenue Agent Edward Barfels

26 (attached as Exhibit 361) shows that the amount of restitution Defendant should be ordered to pay to the

27 IRS totals $402,457.39. This amount includes the tax loss to the IRS caused by Defendant's misconduct

28 for the years 2005 through 2009, which are the years associated with the three counts of conviction. In

16

addition, this amount does *not* include penalties, but does include interest computed through November 9, 2016.

Defendant's contention that the restitution amount should be reduced because California is a community property state is without merit. As the United States Court of Appeals for the Ninth Circuit stated in *Batson*, the restitution ordered as a condition of supervised release can compensate for the loss *caused* by the specific conduct that is the basis of the offense of conviction. *Batson*, 608 F.3d at 637. Here, Defendant's criminal conduct relating to the years 2005 through 2009 caused a harm to the IRS that included not only the tax due from himself, but also the tax due from his wife. Before Defendant unlawfully stopped filing tax returns, he and his wife filed jointly. At trial, Defendant admitted that he kept secret from his wife the fact that he was not filing tax returns. In fact, Defendant states: "My behavior has devastated my wife as I kept her out of the loop". PIR ¶ 20. Accordingly, Defendant's misconduct for the years 2005 through 2009 caused the IRS to suffer a loss of tax revenue due from himself and his wife, and he should be ordered to pay restitution for this full amount, plus interest.

To assist the IRS in properly accounting for and applying restitution payments received from Defendant, the Government respectfully requests that the Court include the following in the Judgment:

The total amount of restitution the defendant shall make to the Internal Revenue Service consists of the following:

| Tax Year and Items | Amount to be credited to Tax | Interest Under the Internal Revenue Code Through November 9, 2016* |
|---|---|---|
| 2005 / 1040 | $43,463 | $25,672.23 |
| 2006 / 1040 | $65,432 | $30,847.59 |
| 2007 / 1040 | $49,812 | $18,062.43 |
| 2008 / 1040 | $67,840 | $19,733.37 |
| 2009 / 1040 | $65,788 | $15,806.77 |

*This interest figure has been calculated by the IRS under 26 U.S.C. § 6601 and/or 6621, as of the anticipated date of sentencing. This interest figure does not include any interest that may accrue under 18 U.S.C. § 3612.

Total amount of restitution ordered: $402,457.39

The defendant shall include with his payments to the District Court, his name and social security number, the District Court's docket number assigned to the case, the tax years

17

for which restitution has been ordered, and a request that this information be sent, along with payment(s), to the appropriate office of the Internal Revenue Service.

The Clerk's Office shall send the defendant's restitution payment(s), along with the information provided by the defendant, to the Internal Revenue Service as the following address:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

## V.    Costs of Prosecution

Title 26, U.S.C. § 7201 provides for mandatory imposition of costs of prosecution upon conviction.  U.S.S.G. § 5E1.5 provides for costs or prosecution to be taxed against the defendant at sentencing, and the Commentary specifically references the tax evasion statute.  Courts have recognized that imposition of costs in criminal tax cases is mandatory and constitutional.  *See, e.g.*, *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986); *United States v. Bussell*, 504 F.3d 956 (9th Cir. 2007); *United States v. Jungels*, 910 F.2d 1501, 1504 (7th Cir. 1990); *United States v. Palmer*, 809 F.2d 1504, 1506-07 (11th 1987); *United States v. Saussy*, 802 F.2d 849, 855 (6th Cir. 1986); and *United States v. Wyman*, 724 F.2d 684, 688 (8th Cir. 1984).  Title 28, U.S.C. § 1920, permits the Court to tax as costs fees and disbursements for, among other things, witness fees used during the course of a trial, and fees for printed transcripts necessarily obtained for use in the case.

Witness fees incurred by the Government for the trial against Defendant total $2,600.90. *See* Exhibit 2. In addition, the Government paid $1,800 for the transcription during trial of portions of a number of audio files from "Freedom Law School" that Defendant provided to the Government as part of his so-called reliance defense.  *Id.* Accordingly, Defendant should be ordered to pay costs of prosecution in the amount of $4,400.90.  Moreover, the United States asserts that, as a result of Defendant's assets and monthly income, Defendant should be ordered to pay as fine which considers the costs of prosecution and his incarceration pursuant to 18 U.S.C. § 3572(a)(6), as discussed below.

## VI.    Fine

The United States respectfully disagrees with the PSR's assessment that Defendant cannot afford to pay a fine.  Defendant's net worth exceeds $2,500,000, and his monthly income from his partnership

(whether he takes his draw or leaves it in the business) is at least $15,000. A fine under the Guidelines for an adjusted offense level of 24 is $10,000 to $100,000.  *See* U.S.S.G. §§ 5E1.2(c)(3); 5E1.2(h)(1) (2014).  A fine representing the costs of prosecution and a portion of Defendant's incarceration (at over $30,000 per year), but within the Guidelines, would be appropriate in this case.  The United States respectfully requests that the Court Order Defendant to pay a fine which considers the costs of prosecution and his incarceration pursuant to 18 U.S.C. § 3572(a)(6).

## VII.   Conclusion

For the reasons set forth above, the United States of America recommends a mid-range Guidelines sentence of 57 months' incarceration, a three-year term of supervised release, restitution of $402,457.39, a $300 special assessment, and a fine of $100,000.

BRIAN J. STRETCH
United States Attorney

*/s/ Colin Sampson*
MATTHEW J.  KLUGE
Trial Attorney, Tax Division
COLIN SAMPSON
Assistant United States Attorney, Tax Division

Attorneys for United States of America