BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

MATTHEW J. KLUGE (PABN 204285)
Trial Attorney, Tax Division
matthew.j.kluge@usdoj.gov
COLIN SAMPSON (CABN 249784)
Assistant United States Attorney, Tax Division
Colin.Sampson@usdoj.gov
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
Telephone:     (415) 436-7020
Facsimile:      (415) 436-7009

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>RICHARD THOMAS GRANT,<br><br>   Defendant. | Case No. 4:14-cr-00590-PJH<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date:   November 9, 2016<br>Time:   2:30 p.m.<br>Place:  Courtroom #3, Oakland |

The United States of America, by and through Brian J. Stretch, United States Attorney, Northern District of California, Colin Sampson, Assistant United States Attorney, and Matthew J. Kluge, Trial Attorney, Tax Division, pursuant to Local Criminal Rule 32-5(C), hereby respectfully submit this Response to Defendant's Sentencing Memorandum (Doc. No. 166). The United States reserves additional arguments for the sentencing hearing.  For the reasons set forth below, and others,[1] the United

---

[1] For example, the United States has previously addressed the inapplicability of the "aberrant

1

States requests that the Court sentence the Defendant, Richard T. Grant, Jr., (hereinafter "Defendant") to a term of 57 months' imprisonment (which equates to the middle of the United States Sentencing Guidelines range given a total offense level of 24 and criminal history category of I), a three-year term of supervised release, restitution as a condition of supervised release in the amount of $402,457.39, a $300 special assessment, and impose a fine within the Guidelines ($10,000 to $100,000).  A fifty-seven (57) month sentence is sufficient, but not greater than necessary, to achieve both Guidelines and statutory sentencing goals.  The Court should adopt the PSR's tax loss amount, the recommendation for an obstruction-of-justice enhancement, and should reject Defendant's request for a reduction from 51-63 months to probation based upon Defendant's claimed diminished capacity, aberrant behavior, and other factors.  A sentence of 57 months is just punishment for Defendant's conviction on multiple counts of tax evasion, and gives appropriate consideration to Defendant's more than decade-long criminal conduct with regards to both federal and state taxes, as well as the amount of the loss, the defendant's education level, age, and other characteristics.

1. <u>Community Property</u>

Defendant asserts that his restitution should not include his wife's community property portion of the taxes he evaded, and thus the restitution should be reduced pursuant to unexplained "community property law limitations." Victim restitution is for those "directly and proximately" harmed by the offense. *See*, *e.g.*, 18 U.S.C. §§ 3663(a), 3663A, 2248(b)(3)(F), 2259(b)(3)(F), 2264(b)(3)(F), and 2327(b)(3).  The reasonably foreseeable result of Defendant's actions of failing to file his business' tax returns and his own tax returns (Grant's employment being the only source of community income), combined with his hiding of these facts from his wife, resulted in evasion of the taxes owed by both Grants.  In other words, the harm to the IRS of not being paid taxes on Mrs. Grant's half of the income earned by the Defendant was directly and proximately caused by the Defendant's criminal conduct. Moreover, Defendant's testimony at trial and Carol Grant's letter to the Court makes clear that their position is that Defendant hid his tax evasion from his wife.  Defendant should not now have his tax evasion both ways and avoid a proper calculation of the fraud loss[2] by blaming his wife for not filing

---

behavior" departure pursuant to U.S.S.G. § 5K2.20 in its Sentencing Memorandum, at Section III(D).

[2] Defendant's papers concede that the restitution amount of $402,457.

2

and paying her own taxes.

### 2. <u>26 U.S.C. § 7201 Is Excepted from the Rule Excluding Interest and Penalties</u>

The tax loss amount, exceeding $2,000,000, properly includes interest and penalties for the years 2000 through 2007, the years in which Defendant evaded the *payment* of his income taxes.  Defendant was convicted of three counts of tax evasion, under 26 U.S.C. § 7201.  Count One constituted evasion of payment of tax for tax years 2005 through 2007, while Counts Two and Three involved evasion of assessment for 2008 and 2009, respectively.  Evasion of payment is the exception to the general rule that interest and penalties ordinarily do not count toward the tax loss.  Defendant provides no basis for the PSR to depart from this guidance as provided in U.S.S.G. § 2T1.1, n. 1, nor does he explain how he was "entrapped," discussed further below.  As a result, the PSR has correctly calculated the tax loss attributable to Defendant's conduct at over $2,000,000.

### 3. <u>"Sentencing Entrapment"</u>

Defendant's argument that he was somehow "entrapped" is particularly egregious.  Defendant was well aware that interest and penalties accrue on unpaid taxes- some the last taxes he ever paid included interest and penalties after his income doubled in 1999.  Moreover, IRS did not wait decades to collect, as he suggests.  IRS Revenue Officers Janet Fong, Clifford Brown, and others, were attempting to contact Defendant in late 2004, shortly after the three-year deadline for filing Defendant's 2000 return had closed.  Defendant further suggests that "IRS could have collected from Mr. Grant ten years ago." <u>Defendant's Sentencing Memorandum</u>, p. 11. However, Defendant actively opposed IRS actions, filing an appeal through Colleen Cahill, and eventually forcing a tax court trial over the proposed liens to be placed on his home, a trial Defendant didn't care to attend.  Later, as IRS attempted to determine Defendant's liabilities for later years, Defendant instituted another suit to quash the IRS summons.  Defendant's appeals and suits delayed IRS by several years.  Defendant's tax liabilities stopped being a civil matter five years ago; Defendant has now been convicted criminally for his years of evasion.  The Court should flatly reject that IRS has engaged in any kind of "sentencing entrapment" that would, at most, be worth two points.

### 4. <u>Diminished capacity- 5k2.13, 5k2.0</u>

Contrary to Defendant's claims, Defendant does not suffer from a diminished capacity that

warrants a departure or variance. Defendant's claims of a diminished capacity or mental illness are belied by the facts. Defendant operated a successful business, managed numerous employees, and made business decisions of all types. He remained married to the same woman since 1977. He successfully raised two daughters, who have graduated from college. He remains close to his family.

Only after Defendant was indicted and facing the prospect of a criminal trial did he pay thousands of dollars for an opinion from a forensic psychiatrist. Defendant's hired Dr. Wood's to provide him with a defense he hoped would convince a jury he was not guilty. The jury did not buy it. Defendant's psychiatrist's testimony and his reports were completely discredited at trial. Defendant does not suffer from temporal lobe epilepsy or bipolar disorder.

Moreover, Defendant incorrectly, and repeatedly, cites to a report of a government expert, Dr. Chan, who did not testify at trial. Dr. Chan's evaluation of the Defendant was clear: Richard Grant suffers from no mental condition. Any opinion beyond this is irrelevant to the issue of Defendant's claimed mental condition. Moreover, the jury rejected the Defendant's (and Dr. Woods') claim of a mental defect.

5.  Defendant's "Present treatment program"

Defendant asks for a departure from 51-63 months to probation, in part to continue his therapy. Defendant provides no addition information about this therapy, other than it occurs at the Berkeley Therapy Institute. The PSR makes clear how much therapy Defendant thinks he needs: he attended therapy "once, for one hour, in August 2016, and again on September 6, 2016." PSR, ¶ 69. The context of this fact makes clear that the stress causing him to see a therapist comes from his stress about his impending incarceration, and not because he believes that he has a mental condition. The PSR further indicates that Defendant receives no medication. PSR, ¶ 56. He is described as generally healthy. The Court should reject Defendant's request for probation for therapy.[3]

///

///

---

[3] Relatedly, Defendant's brief brings up community service. Defendant has not indicated what, if any, community service he would be interested in (beyond that related to using his airplanes), nor does it indicate that he had any interest in community service before he was convicted.

4

6. <u>Other Sentences Cited by Defendant.</u>

Defendant cites several cases, mostly from other districts, to support his request for a downward departure and a term of probation, rather than a sentence within Zone D.  Defendant cites several cases outside this District, including the *Olenicoff* case, (Case No. 07-227, C. D. Cal), in which the defendant pleaded guilty to one count of filing a false return.  *Olenicoff*, however, is inapposite.  According to the Government's Sentencing Memorandum in that matter, the Presentence Report calculated the defendant's total offense level to be 4.  Here, Defendant's offense level is 24.  (*See* <u>Sentencing Memorandum</u>, Doc. No. 14, p. 2, Case No. 07-227, (C. D. Cal.)).  Moreover, unlike here, the Defendant had already fully paid restitution.

Defendant cites the *Warner* sentencing in the Northern District of Illinois in support of probation.  The defendant was convicted of one count of tax evasion and sentenced to 500 hours of community service.  The *Warner* case, involving the creator of Beanie Babies, was appealed by the United States to the Seventh Circuit Court of Appeals, Case No. 14-1330.  The defendant in that case had cancer.  (*See Id.*, Doc. No. 26, pp. 16, 21).  Again, the defendant in that matter fully paid the restitution by sentencing. (*See Id.*, Doc. No. 24, p. 38).  Defendant's case is further distinguishable from *Warner* in that those defendants committed evasion by participating in undeclared Swiss Bank accounts.  Unlike the Swiss bank account cases, which only affected the Treasury, Defendant's tax evasion and business conduct affected others, including his business partner brother.

Defendant further cites numerous cases in which the defendants received much shorter sentences than the applicable Guidelines range.  However, no case cited by Defendant had a guidelines range of 51-63 months, or even as low as Defendant concedes should be his Guidelines range (33-41 months).  Although Defendant insists that he did not act out of greed, and that his case is not within the "heartland" of cases that the Guidelines addresses, he provides no basis for the Court to find that his tax evasion was anything out of the ordinary, for which defendants are sentenced.  Although it does not matter what a defendant does with the proceeds of his or her evasion, Defendant accumulated equity in a home (recently listed for sale at $1,100,000), two airplanes and multiple airplane parts, and a 2-bedroom 52' yacht.

///

**I.      Conclusion**

Defendant is a tax cheat who has now been convicted of committing tax evasion over five consecutive years. He did not file or pay federal or state income taxes for 15 years even though he owned a successful engineering firm and earned hundreds of thousands of dollars in income each year. Defendant used the substantial money he stole from the U.S. Government to pay for, among other things, two airplanes, a yacht, and a million dollar water front property on the San Francisco Bay. Defendant has yet to file a tax return or pay a dime in taxes or restitution.

Defendant should be sentenced to a lengthy period of incarceration consistent with the Guidelines calculations to reflect the seriousness of his crimes, to punish him, to deter him from future misconduct, and to deter other would-be tax cheats.

For the reasons set forth above, the United States of America recommends a mid-range Guidelines sentence of 57 months' incarceration, a three-year term of supervised release, restitution of $402,457.39, a $300 special assessment, and a fine.

BRIAN J. STRETCH
United States Attorney

*/s/ Colin Sampson*
MATTHEW J. KLUGE
Trial Attorney, Tax Division
COLIN SAMPSON
Assistant United States Attorney, Tax Division

Attorneys for United States of America